United States District Court
Southern District of Texas
**ENTERED**
February 28, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DISABILITY RIGHTS TEXAS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-00121 |
| | § | |
| **ROY HOLLIS,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Currently pending before the Court are Plaintiff Disability Rights Texas and Defendant Roy Hollis's Motions for Summary Judgment. (Docs. 20, 22.) For the reasons discussed below, the Court **GRANTS** Plaintiff's request for declaratory judgment and **GRANTS IN PART** Plaintiff's request for injunctive relief. The Court **DENIES** Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

    **A. Parties**

Under the Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C. § 10801, et seq.; the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001, et seq.; and the Protection and Advocacy for Individual Rights Act, 29 U.S.C. § 794e (collectively the "P&A Acts"), Congress mandates states to designate nonprofits ("P&A systems") to protect and advocate for civil rights of individuals with disabilities. Texas designates Plaintiff Disability Rights Texas (or "DRTx") to perform this mandate. (Doc. 1 at ¶ 7.) The P&A Acts authorize

Plaintiff to access confidential records of programs serving people with disabilities to investigate allegations of abuse and neglect. *Id.* ¶ 11.

Plaintiff sues Defendant Roy Hollis in his official capacity as the Chief Executive Officer and registered agent of Houston Behavioral Healthcare Hospital, LLC. (Doc. 1 at ¶ 9.) Houston Behavioral is a for-profit company that provides treatment and stabilization for acute psychiatric conditions. *Id.* ¶ 14. The P&A Acts require the facility to provide Plaintiff access to records where Plaintiff fulfills specific criteria. (Doc. 10 at ¶ 27.) The Heath Insurance Portability and Accountability Act, 42 U.S.C. § 1320d et seq. ("HIPAA") authorizes disclosures of otherwise-protected documents where required by the P&A Acts. (Doc. 10 at ¶ 26.)

### B. Alleged Events

This case stems from the involuntary confinement of G.S., an individual with mental illness, at Defendant's facility. *Id.* ¶ 14. In August 2021, G.S. was detained in a locked psychiatric inpatient program at Defendant's facility. Following his release, G.S. filed a complaint with Plaintiff alleging he was abused at Defendant's facility and signed a waiver allowing Plaintiff to access his records. *Id.* ¶¶ 15-16. Specifically, G.S. alleged staff improperly and unnecessarily medicated him against his will. *Id.* ¶ 15. Defendant cooperated with Plaintiff's first set of requests for information. *Id.* ¶ 17. However, Defendant subsequently refused to provide Plaintiff with video record requests. Defendant stated that only one of the three requested videos was preserved and denied the request for this video. *Id.* ¶¶ 19-20.

At the time, Defendant cited 42 C.F.R. Part 2 ("Part 2"), stating that the videos covered Part 2 programs and that the regulation restricts the facility's disclosure of records relating to substance use disorder patients. *Id.* ¶ 21. Plaintiff sent a letter explaining that Part 2 did not apply to G.S.'s program and that it would not be possible to identify any individual on the video as

someone with a substance abuse disorder. *Id.* ¶ 22. Defendant subsequently abandoned this argument.

When Defendant continued to deny Plaintiff access to the video, Plaintiff filed suit. Meanwhile, Plaintiff has requested—and Defendant has denied—access to videos relating to other individuals' allegations. Defendant preserved these videos pending the Court's adjudication of this issue. (Doc. 23-1 at ¶¶ 15-17.)

### C. Remedies Sought

Plaintiff seeks declaratory and permanent injunctive relief. It asks the Court to "[i]ssue a declaratory judgment that Defendant's policies, procedures, regulations, and practices of denying DRTx access to Houston Behavioral video tape records violates the [P&A Acts]." (Doc. 1 at 9.) It also asks the Court to "[g]rant permanent injunctive relief that enjoins Defendant, his agents, and employees from denying DRTx access to the requested video tape records of G.S., as well as any future silent video tape records of individuals receiving treatment in Houston Behavioral's locked adult psychiatric inpatient program." *Id.*

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated

assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)). "[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718-19.

### III. ANALYSIS

Parties agree that no material issues of fact exist. The only issue for this Court's adjudication is whether Plaintiff, as part of its investigation into G.S.'s allegation of abuse, can access surveillance videos of G.S. that may also include the faces of individuals undergoing treatment without those individuals' authorization.

The (1) plain language of the law, (2) purpose of the P&A Acts, and (3) existence of stringent statutory privacy protections for P&A systems provide clear and consistent evidence for Plaintiff's position that Defendant must grant Plaintiff access to the video.

First, the plain language of the P&A Acts indicates that P&A systems may access records that contain confidential third-party information without these individuals' authorization. 42 U.S.C. § 10805(a)(4) requires Defendant to provide Plaintiff with "all records—of any individual" once that individual or their legal guardian provided consent to investigation. While the Fifth Circuit has not ruled on the issue of whether P&A systems may access records containing third-party information, federal courts have consistently read this language to provide P&A systems

with broad access to records. District courts, including at least one in this circuit, have explicitly allowed access to unredacted video records based on the expansive statutory language. *See, e.g.*, *Disability Rts. Texas v. Bishop*, No. 1:21-CV-124-H, 2022 WL 2817983, at *7-8 (N.D. Tex. July 19, 2022) ("Neither the phrase 'of any individual' nor the statutory definition requires 'records' to be limited to those exclusively produced as part of the care, treatment, or investigation into the abuse or neglect of a particular individual."); *see also Disability Rights New York v. Wise*, 171 F.Supp.3d 54, 59 (N.D.N.Y. 2016) (finding that the P&A Acts "make clear that P&A systems . . . are entitled to all records of subject individuals, and give no indication that investigative agencies should redact or withhold portions of their reports.").

Second, the purpose of the P&A Acts necessitates Plaintiff's access to relevant evidence, including video evidence, even where other individuals' privacy rights may be implicated. The stated statutory purpose of P&A systems' investigative powers is to "investigate incidents of abuse and neglect of individuals with mental illness" and "to ensure the rights of individuals with mental illness are protected." 42 U.S.C. § 10801(b).  Final rule guidance pertaining to the P&A Acts, published by the U.S. Department of Health and Human Services, discusses the importance of systems' broad access for the effective implementation of the Acts. "In order for the P&A system to carry out its mandate to . . . investigate allegations of abuse or neglect in public and private facilities, they must be empowered to access information contained in all records relevant to [a full investigation of a report or complaint]." 62 Fed. Reg. 53548, 53560 (Oct. 15, 1997). The guidance further notes that several respondents to its Notice of Proposed Rulemaking emphasized "the importance of including records which do not only relate to the individual who is the object of a full investigation and felt it particularly important that the decision regarding which records are relevant be at the sole discretion of the system," and agreed that providers should have reasonable

access to "all 'relevant' records." *Id.* Finally, Plaintiff provides a declaration from one of its employees discussing video evidence's critical role in its investigations. (Doc. 32-1 at ¶¶ 18-21.) These sources demonstrate that Defendant's ability to block Plaintiff from reviewing video records would significantly hinder Plaintiff from fulfilling its federal mandate.

Third, the risk of allowing P&A systems to access third-party information is minimal. The P&A Acts require systems to "maintain the confidentiality of such records to the same extent as is required of the provider of [mental health services]." 42 U.S.C. § 10806(a); *see also Advoc. Inc. v. Tarrant Cnty. Hosp. Dist.*, No. 4:01-CV-062-BE, 2001 WL 1297688, at *5 (N.D. Tex. Oct. 11, 2001). Courts have provided P&A systems access to security-camera footage that may capture other patients based, in part, on these existing statutory protections:

> [Defendant] argues that disclosure of security-camera footage may violate the privacy rights [under HIPAA] of other detainees, even when the footage includes the detainee in question. But PAIMI requires P&A organizations that access records to maintain the confidentiality of such records to the same extent as is required of the provider of mental health services . . . . It is unknown whether the video clip requested by DRTx contains footage of detainees other than B.W. But in any case, DRTx is subject to the same confidentiality requirements that the [facility] is subject to, and DRTx acknowledges this duty . . . . The Court finds that existing statutory protections adequately protect the privacy rights of other detainees that may be in the video requested by DRTx.

*Bishop*, 2022 WL 2817983 at *11-12 (citations omitted); *see also Disability Rts. Ohio v. Buckeye Ranch, Inc.*, 375 F.Supp.3d 873, 888 (S.D. Ohio 2019) (citation omitted) (stating P&A systems are "under an especially significant duty of confidentiality").

Defendant makes sweeping arguments that a ruling in favor of Plaintiff would broaden the scope of patient access and "eviscerate patient privacy safeguards provided under HIPAA." (Doc. 20 at ¶ 1.) But Defendant provides no authority other than his own statutory interpretation for the contention that HIPAA limits the ability of P&A systems to access protected information where investigating abuse.

Defendant further seeks to distinguish prior caselaw from the present issue. Defendant argues that these cases do not authorize P&A Systems to access protected health information, occur in different institutional settings, or relate to systemic rather than individual interpretations. (Docs. 20 at ¶ 17; 27 at ¶ 14.) But Defendant fails to tie these arguments to specific statutes or to otherwise provide authorities limiting the reach of P&A systems' investigative powers. While some cited cases have different fact patterns, these facts do not materially impact the underlying legal issue.

The Court must conclude that Plaintiff has the right to the requested video record.

## IV. RELIEF

Having found Plaintiff has a right to access the records, the Court must now consider Plaintiff's requested relief.

### A. Declaratory Relief

Plaintiff first requests declaratory judgment in its favor. A declaratory judgment action requires a justiciable controversy—"the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Defendant does not dispute that a substantial and real controversy exists between the parties regarding whether Plaintiff can access the video. Accordingly, the Court finds that Plaintiff is entitled to the issuance of declaratory judgment concerning its right to access the video.

### B. Injunctive Relief

Plaintiff second requests that this Court permanently enjoin Defendant from denying Plaintiff "immediate access to any and all video records pertaining to G.S." and "from denying future video records requests by DRTx of individual specific incidents of abuse and neglect where

DRTx has provided consent from or articulated probable cause about the victim, regardless of whether third parties are captured in the video." (Doc. 28-1 at 1-2.)

Having determined the merits of Plaintiff's complaint, the Court considers whether to grant a permanent injunction and the appropriate scope of such a remedy. First, a plaintiff seeking a permanent injunction must satisfy a four-factor test demonstrating that: (a) it has suffered irreparable injury; (b) there is no adequate remedy at law; (c) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted;" (d) and that the public interest is not disserved by the injunction. *eBay Inc., et al. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Second, the Court must "narrowly tailor" an injunction "to remedy the specific action which gives rise to the order." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (citation omitted).

### 1. Eligibility for Injunctive Relief

Courts have repeatedly found that permanent injunctions are appropriate in similar cases. Like these cases, the Court finds that factor weighs in favor of Plaintiff and, therefore, injunctive relief is necessary.

#### i. Irreparable Harm

The Court considers whether Plaintiff has experienced irreparable harm by being denied access to G.S.'s video and, potentially, other similar videos. Plaintiff provides evidence that video is often necessary to conduct an effective investigation because providers frequently omit information from written documents. (Docs. 23 at 23; 23-1 at ¶ 18.) In this case, Plaintiff contends video will be critical to evaluating G.S.'s abuse claims. (Docs. 23 at 16; 23-1 at ¶ 7.)

Other courts have found irreparable harm on similar facts. "[I]rreparable harm exists when a P & A system is unable to fulfill its [investigative] mandate under federal law." *J.H. ex rel. Gray*

*v. Hinds Cnty.*, No. 3:11-CV-327-DPJ-FKB, 2011 WL 3047667, at *2 (S.D. Miss. July 25, 2011) (collecting cases); *see also Bishop*, 2022 WL 2817983 at *12 (same); *Buckeye Ranch*, 375 F.Supp.3d at 897 ("[T]here is no dispute that a P&A system's 'inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm.'"); *Iowa Prot. & Adv. Servs. v. Rasmussen*, 206 F.R.D. 630, 635 (S.D. Iowa 2001) (finding, regardless of whether investigation would ultimately confirm abuse, P&A system would be irreparably harmed by being denied records).

### ii. No Adequate Remedy at Law

The Court next considers that monetary relief would be an inappropriate alternative remedy. Caselaw establishes that injunctive relief is the only adequate relief in similar situations. *See, e.g., Prot. & Advoc. for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 311 (D. Conn. 2003) (collecting cases); *see also Bishop*, 2022 WL 2817983 at *12 (finding plaintiff had no adequate remedy to redress denial of access to video necessary to complete investigation); *Advoc. Ctr. v. Stalder*, 128 F.Supp.2d 358, 367-68 (M.D. La. 1999) (finding no adequate legal remedy was available to remedy facility's denial of records).

### iii. Balance of Hardships

The Court further considers whether the threatened injury of denying the injunction outweighs the harm caused. If denied records, Plaintiff would be unable to fulfill its investigatory mandate. In contrast, the burden on Defendant is minimal, particularly given Plaintiff's stringent confidentiality obligations. Previous courts have found the same: "[T]he court sees no harm that would come to the defendants by forcing them to comply with the provisions of the PAIMI Act. . . . Issuance of a permanent injunction . . . does not subject the defendants to a penalty or hardship

since it requires them to do exactly what the act requires, i.e., to comply with the law." *Stadler*, 128 F.Supp.2d at 368.

### iv. Public Interest

Finally, the Court considers the public interest in Plaintiff's access to records and, conversely, in protecting sensitive health documents. Congress provided for P&A systems with a broad breadth of access. "In determining the public interests that are relevant to a motion for a preliminary injunction, this Court may consider Congress's statements about the public interest. . . . By enacting the P & A Acts, Congress made an explicit finding that '[s]tate systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate.'" *Buckeye Ranch*, 375 F.Supp.3d at 897 (citing 42 U.S.C. § 10801).

The Court concludes that the four factors favor granting a permanent injunction.

### 2. Scope of Injunctive Relief

Having found injunctive relief appropriate, the Court must now consider the breadth of such relief. Any form of injunctive relief must be narrowly tailored. *Scott*, 826 F.3d at 211. Plaintiff seeks injunctive relief concerning videos pertaining to G.S., as well as for "future video records requests by DRTx of individual specific incidents of abuse and neglect where DRTx has provided consent from or articulated probable cause about the victim, regardless whether third parties are captured in the video." (Doc. 28-1 at 1-2.)

In *Bishop*, Plaintiff similarly requested an injunction for future video requests. The Court limited the scope of such an injunction "because DRTx fail[ed] to present evidence that Bishop has denied video-records requests on occasions other than for the investigation regarding B.W." 2022 WL 2817983, at *12. In contrast, in the present case, Plaintiff states that the situation has already arisen again—since the incident involving G.S., it has received several complaints

regarding improper restraint and emergency medication and has requested the facility preserve videos pending the result of this case. (Doc. 23-1 at ¶¶ 15, 17.) "To require [Plaintiff] to re-litigate each time it seeks to obtain access to [Defendant's] records would impede [Plaintiff's] ability to effectively investigate and would defeat the purpose of [the P&A Acts]." *Matter of Disability Rts. Idaho Request for Ada Cnty. Coroner Recs. Relating to the Death of D.T.*, 168 F. Supp. 3d 1282, 1300 (D. Idaho 2016).

Nevertheless, the Court is reluctant to provide for a broad permanent injunction absent evidence Defendant will not abide by its clarified responsibilities. The Court notes that Defendant has cooperated with Plaintiff by agreeing to preserve other videos pending the adjudication of this lawsuit. Accordingly, the Court finds a narrow permanent injunction directed only at evidence relating to G.S. is appropriate at this time. It hopes parties will collaborate to ensure Plaintiff has appropriate access to investigative records, and can revisit the issue should a modification of the injunctions' scope be necessary in the future.

## V. CONCLUSION

The Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment. It **GRANTS** Plaintiff's request for a declaratory judgment that Defendant's policies, regulations, and practices of continuing to deny Plaintiff full, complete, meaningful, and timely access to Houston Behavioral Healthcare Hospital video records of G.S. violated and continues to violate the P&A Acts. It also **GRANTS IN PART** Plaintiff's request for injunctive relief. Defendant, his agents, and employees are permanently enjoined from denying Plaintiff immediate access to any and all video records pertaining to G.S.

The Court **DENIES** Defendant's Motion for Summary Judgment.

Pursuant to Federal Rule of Civil Procedure 54(d), Plaintiff may file a Motion for Attorneys' Fees and Costs within 14 days of entry of this order.

**IT IS SO ORDERED**.

Signed at Houston, Texas on February 28, 2023.

Keith P. Ellison
United States District Judge